UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 23-cr-10259-PBS |
| | ) | |
| FRANCISCO SEVERO TORRES | ) | |

**DEFENDANT'S SENTENCING MEMORANDUM**

**I.     Introduction**

Francisco Torres suffers from schizophrenia. PSR ¶ 52; Ex. A, Competency Restoration Report, p. 20. He had schizophrenia at the time of his offense, he has schizophrenia now, and, because it is a chronic condition, he will have schizophrenia for the rest of his life. Ex. A, Competency Restoration Report, pp. 18, 20.[1] Although Mr. Torres' schizophrenia was untreated at the time of his offense, it is being effectively treated now and he is doing well. PSR ¶¶ 62, 63. This is not surprising because he has a history of responding well to treatment with anti-psychotic medication and it is the main treatment for schizophrenia. PSR ¶ 58; "Schizophrenia, Diagnosis and Treatment," Mayo Clinic webpage at https://www.mayoclinic.org/diseases-conditions/schizophrenia/diagnosis-treatment/drc-20354449.

Mr. Torres' schizophrenia and whether it was effectively treated at any given time are the paramount factors for the Court to consider at sentencing. When properly medicated, Mr. Torres is a completely different person than when unmedicated. The Francisco Torres who will appear

---

[1] Defense Exhibits A, B, and C all consist of private medical records from FMC-Devens and have been submitted under seal.

1

at sentencing is not the same Francisco Torres who committed this serious offense on March 5, 2023. Due to the dominant influence of a serious mental illness, some of the statutory sentencing factors of 18 U.S.C. 3553(a) do not apply neatly to this case because they assume that the defendant or others like him are rational actors. Other factors, like the nature and circumstances of the offense and the history and characteristics of the defendant, do appropriately consider Mr. Torres' schizophrenia.

By considering the particular facts of this case, Mr. Torres' history, and the course of his treatment over more than two years in pretrial detention, the parties have arrived at a joint recommendation for a sentence of time served and five years of supervised release with specific conditions designed to ensure that he remains properly treated. Even though the degree of Mr. Torres' mental illness combined with the availability of effective treatment could support a significant variance from the advisory guidelines range, the 26 months he has already served is only slightly below the agreed advisory range of 37 to 46 months. PSR ¶ 70. Thus, the guidelines for a fully rational defendant would only recommend a sentence slightly longer than what the parties jointly recommend for Mr. Torres. Ultimately, the parsimony principle that mandates a sentence that is "sufficient, but not greater than necessary" supports the parties' joint recommendation. 18 U.S.C. § 3553(a). Under all the factors addressed below, it is simply not *necessary* to further imprison Francisco Torres and the best course of action is to supervise him to ensure that consistently receives recommended treatment.

## II. Mr. Torres' frightening conduct on an airplane was clearly due to his untreated schizophrenia.

On March 5, 2023, Mr. Torres frightened, threatened, and harmed the passengers and crew on a flight from Los Angeles to Boston. Before takeoff he asked another passenger about the location of a handle to an exterior door. PSR ¶ 10. Approximately 45 minutes prior to landing he moved the locking handle approximately ¼ of the way toward the unlocked position, which triggered an alarm inside the cockpit. PSR ¶ 11. When a flight attendant then asked Mr. Torres if he tampered with the door, he became agitated. PSR ¶ 12 This interaction led Mr. Torres to stand up in his row and begin to shout bizarre statements that were clearly the product of schizophrenic delusions. PSR ¶ 13. His disruptive behavior drew the attention of the passengers and flight attendants. Mr. Torres then thrust the broken handle of a metal spoon at a responding flight attendant several times. PSR ¶ 14. Passengers and flight attendants bravely responded by tackling Mr. Torres and holding him down until the plane landed and law enforcement could take him into custody. Id.

After his arrest, Mr. Torres agreed to be interviewed by law enforcement and offered bizarre explanations for his behavior- that his name was "Balthazar," that he had miraculous healing powers because he survived stabbing himself 21 times in the heart, that he was married to a non-existent woman and was speaking to her during his outburst on the planE, and that he wanted to be shot with a rifle to show his ability to die and be reborn. PSR ¶ 18.

Mr. Torres' behavior and statements resulted in competency proceedings that began shortly after his initial appearance and lasted for more than two years until he was finally found competent and pled guilty pursuant to a plea agreement on May 13, 2025. PSR ¶¶ 52-55; Ex. A, Competency Restoration Report.

Mr. Torres has suffered from schizophrenia for approximately 10 years, as he first was diagnosed in 2015 when he was 25. PSR ¶ 57. This is a typical age of onset for the disease, which commonly first occurs between the late teens and early thirties. "Schizophrenia, Symptoms and Causes," Mayo Clinic webpage available at https://www.mayoclinic.org/diseases-conditions/schizophrenia/symptoms-causes/syc-20354443. Schizophrenia requires lifelong treatment. Id.

Unfortunately, Mr. Torres has only been treated intermittently for schizophrenia in the past. PSR ¶ 60. When untreated, his illness has led to conflicts with his family and the law. PSR ¶¶ 42, 43, 58; Ex. A, Competency Restoration Report, pp. 7-8. Significantly, he appears to have never been supervised in the community and *required* to take medication by any court. Although he was twice previously charged with criminal offenses that were driven by schizophrenic delusions, both cases were dismissed in response to the obvious mental health considerations. PSR ¶¶ 42, 43. In both cases he was initially referred for and did receive treatment, PSR ¶ 60, but once the cases were dismissed there was no authority that could require treatment. As a result, Mr. Torres succumbed further to the illness, including stopping his medication. The consequences were serious, with his conduct in this case being the most serious consequence of all.

The defense is well aware, as presumably is the government, that Mr. Torres' behavior and history could have formed a colorable defense that he was not guilty because he was "unable to appreciate the nature and quality or the wrongfulness of his acts." 18 U.S.C. 17. Mr. Torres chose not to pursue such a defense, which is his right given that he is competent to stand trial. *See Lang v. Demoura*, 15 F.4th 63, 68 (1st Cir. 2021), citing *McCoy v. Louisiana*, 138 S.Ct. 1500,

4

1507-12 (2018). However, had Mr. Torres presented such a defense and been successful he would have been subject to civil commitment proceedings on the question of whether he is too dangerous to be released to the community as a result of mental disease or defect. 18 U.S.C. 4243. In light of the great progress he has made with treatment as explained below, the government may not have moved forward with such a commitment or Mr. Torres may have prevailed and been released without court supervision. These possibilities were discussed extensively with Mr. Torres as part of the competency evaluation. Ex. A, Competency Restoration Report, p. 16. Mr. Torres chose to accept responsibility knowing that he would be subject to an extended period of court supervision in the community and specifically required to comply with all treatment recommendations, including medication. The defense submits that this was both a rational choice and one that demonstrates an understanding of the harm he caused.

### III. The cause of Mr. Torres' offense, his schizophrenia, responds well to treatment with anti-psychotic medication.

Fortunately, this Court now has the opportunity to implement the community supervision which Mr. Torres so obviously needs to ensure that he takes his medication and complies with all recommended treatment. This case is already the first time Mr. Torres has ever been incarcerated, and the two years he has been behind bars have not been wasted. PSR ¶¶ 35-43.

Records already showed that Mr. Torres' symptoms of schizophrenia have responded well to anti-psychotic medication in the past. PSR ¶ 58. That has also been true during the past two years of pretrial detention, competency restoration, and treatment. Mr. Torres' baseline for behavior and thinking when unmedicated is the frightening and bizarre conduct he displayed on the airplane on March 5, 2023. He is also alleged to have assaulted a corrections officer while

detained at the Wyatt Detention Facility the very next day after. PSR ¶ 5. However, since first being sent to FMC-Devens for a competency evaluation in April 2023, which is when he first began receiving treatment, Mr. Torres has not exhibited any behavior that even suggests violence.

Mr. Torres' providers at FMC-Devens all have noted his significant improvement while on medication. The most recent clinical note from his time at Devens reflects stable behavior, medication compliance, and appropriate discussion of medication options. Ex. B, Clinical Encounter, April 11, 2025. Clinical notes from April 3rd and March 11th show the collaboration amongst all the parties to develop an appropriate treatment plan, as well as Mr. Torres' own involvement, which demonstrates his commitment to the process. Ex. B, Clinical Encounters, April 3, 2025 and March 31, 2025.

Behavioral Observation notes from January through March 2025 describe similarly appropriate behavior by Mr. Torres. Ex. C, Behavioral Observations, January-March 2025. The most recent one, from March 19, 2025, includes this description:

> Mr. TORRES was returning from commissary when I approached him. He mentioned that he had already been to Recreation and "shopped" this morning. He was in a positive mood and was able to express some humor about how frequently he exercises (1-2 times a day). He was appropriately dressed with a clean-shaven head. He was oriented to his physical circumstances and surroundings. His speech was linear, coherent, and slow. He did not appear to be hallucinating, and he expressed no overtly delusional ideation in our brief conversation. His observed affect was blunted. His concentration, attention, and memory appeared intact. Judgment was good based on his interactions with staff and peers in the institution. No psychomotor concerns noted.

Exh. C, Behavioral Observation, March 19, 2025.

The Devens competency restoration evaluator reviewed all the evidence of Mr. Torres' progress since he began treatment and included the following assessment in his report:

> The available evidence indicates Mr. Torres' symptoms began to improve after he began taking anti-psychotic and mood stabilizing medication consistently. Mr. Torres has now been on a therapeutic dose of psychiatric medication consistently for more than a year. During the current evaluation, he demonstrated more organized thinking/speech and calmer affect than he has in the past. His behavior appears to be much better controlled now than it was when he was in the community without psychiatric medication. Although Mr. Torres continues to endorse unusual ideation, his reality testing has improved dramatically and his unusual ideas no longer appear to influence his daily behavior.

Ex. A, p. 19.

The evaluator's determination that medication was the primary factor in Mr. Torres' improvement is consistent with the accepted medical understanding of how to best treat schizophrenia. "Schizophrenia, Diagnosis and Treatment," Mayo Clinic webpage at https://www.mayoclinic.org/diseases-conditions/schizophrenia/diagnosis-treatment/drc-20354449.

Mr. Torres' improved behavior has continued even after being released from FMC-Devens two months ago. He is receiving his prescribed injections of anti-psychotic medication every two weeks. PSR ¶ 62. As noted above, medication is the most important and effective treatment for schizophrenia. It is clearly having the intended effect as he has complied with all conditions of release over the last two months. PSR ¶ 5. He exercises regularly and eats healthy. PSR ¶ 62. Although his mother believes he may be overmedicated because he sleeps an average of 12 hours per night, she reported to probation that he is doing well and complying with his treatment. PSR ¶ 63. In addition to the treatment he has already receiving, Mr. Torres has also submitted an application to the Massachusetts Department of Mental Health Services and is awaiting a determination of eligibility for services. In the meantime, Mr. Torres, the probation department, and undersigned counsel have conferred about ways to provide additional treatment,

including the possibility of outpatient programming or membership in clubhouse programs that offer structure and support for persons suffering from mental illness.

### IV. The statutory sentencing factors support the jointly recommended sentence.

In determining whether to accept the plea agreement and jointly recommended sentence, the Court must consider the sentencing factors of 18 U.S.C. 3553(a). Those factors taken together ultimately do support the joint recommendation.

The "nature and circumstances of the offense," while serious and harmful to the victims, support the recommendation because they demonstrate that Mr. Torres was strongly influenced by the clear symptoms of his untreated schizophrenia. 18 U.S.C. 3553(a)(1). Similarly, the "history and characteristics of the defendant" support the recommendation because they show that Mr. Torres has suffered from schizophrenia for 10 years, has responded well when treated appropriately, has never previously been required to comply with treatment by court supervision, and appears to never have committed any offenses while he was treated properly. Id.

The next trio of sentencing factors- promoting "respect for the law", providing "just punishment," and "deterrence" – are ones that do not apply easily to this case because they are based on the assumption of a knowing, rational defendant and, for general deterrence, rational similarly situated individuals. 18 U.S.C. 3553(a)(2)(A),(B). Given the degree of Mr. Torres' mental illness, that was obviously not the case here. Because of his mental illness, simply incarcerating him will not accomplish these goals because the overriding issue is not one of a lesson to be learned, but rather a disease to be monitored and treated.

Of course, "protection of the public" could always theoretically be accomplished through more incarceration. 18 U.S.C. 3553(a)(2)(C). But given that there is no justification for a life

sentence for Mr. Torres, protection of the public will be best accomplished through proper treatment and supervision. Because Mr. Torres is properly medicated now and has complied with all conditions since released, the best course is to continue his treatment and supervision while he is currently stable. Protection of the public thus supports continuing him on release rather than imposing additional incarceration. Doing so will also provide him with "needed medical care." 18 U.S.C. 3553(a)(2)(D).

The Court must also consider the advisory sentencing range. 18 U.S.C. 3553(a)(4). The parties and probation agree that the advisory range is 37-46 months. However, application of the advisory range in this case suffers from the same flaw as trying to promote respect for the law, provide just punishment, and deter Mr. Torres and others like him – the assumption of the rational defendant who can learn a lesson from incarceration. That is obviously not true here, and thus the defense suggests that the guidelines should not be considered a particularly strong factor in this case. In any event, the guidelines for a fully rational defendant with the same conduct would only call for a sentence of 37 months, approximately 11 months more than the 26 months Mr. Torres has already served. For both of these reasons, the advisory guidelines range does not counsel against acceptance of the plea agreement and joint recommendation.

The last two sentencing factors also do not support rejecting the plea agreement. In most cases, it is important to follow the requirement to "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. 3553(a)(6). Given the bizarre behavior and clear influence of mental illness, the defense submits that this case is sufficiently unique so that there is not a sizable set of fairly comparable cases. Lastly, although Mr. Torres' actions caused harm, the defense is not aware of any "need to

9

provide restitution to any victims of the offense" and the plea agreement does not contemplate restitution. 18 U.S.C. 3553(a)(7); PSR ¶¶ 80, 81.

V.     **Conclusion**

In this case, the criminal justice system responded the way it was intended to. After Mr. Torres committed a serious offense, he was taken into custody, which provided immediate protection both to the public and to himself. The court then responded to his serious mental illness by carefully assessing his competency to stand trial and simultaneously providing effective psychiatric treatment. As he became competent and his behavior improved, the parties and probation worked together to identify a suitable release plan.  Mr. Torres has now been on release and receiving treatment in the community for two months. To the extent that additional treatment may be identified in the future, the parties will continue to work together to help Mr. Torress access it. In light of all the factors above, the combination of treatment and supervision is now the best and most just result for both Mr. Torres and the public. For all these reasons, the recommended sentence of time served and five years of supervised release with tailored conditions is one that is "minimally sufficient to achieve the broad goals of sentencing." *United States v. Rodriguez*, 527 F.3d 221, 228 (1st Cir. 2008).

Respectfully submitted,
FRANCISCO SEVERO TORRES
By his attorney,

*Joshua Hanye*
Joshua Hanye
BBO # 661686
Federal Public Defender Office
51 Sleeper Street, 5th Floor
Boston, MA 02210
617-223-8061

## Certificate of Service

    I, Joshua R. Hanye, hereby certify that this document was this day filed through the ECF system and will be sent electronically to the registered participants as Identified on the Notice of Electronic Filing ("NEF"), and by e-mail to AUSA Kenneth Shine and USPO Ryan Fox.

Date: <u>July 13, 2025</u>                                     <u>*/s/ Joshua R. Hanye*</u>
                                                                  Joshua R. Hanye