UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>FRANCISCO SEVERO TORRES,<br><br>Defendant. | Criminal No. 23-CR-10259-PBS |

## GOVERNMENT'S SENTENCING MEMORANDUM

The defendant Francisco Severo Torres, while untreated for a serious mental health condition, attempted to open an airplane cabin door while the plane was in flight, threatened passengers on the aircraft, and ultimately attempted to stab one of the flight attendants in the neck multiple times with a metal spoon that he had broken in the plane lavatory to create a sharper edge. Passengers and flight attendants moved swiftly to restrain Torres, and no one was seriously physically injured, although the terrifying experience will no doubt remain with everyone on board for years to come.

Subsequent mental health evaluations have indicated that Torres suffers from schizophrenia, but, when properly treated, does not pose a threat to the safety of others. Notably, his mental health condition was reasonably well-managed for the bulk of his adult life prior to this incident, and he did not have any issues in pretrial custody after receiving mental health treatment.

Accordingly, in the unique circumstances of this case including the specific characteristics of this defendant and his mental health condition, the government respectfully requests that this Court impose a sentence of 26 months and nine days in prison (equivalent to

the amount of time he has been incarcerated to date), to be followed by five years of supervised release with strict mental health monitoring and treatment conditions to ensure the safety of the defendant and the community. In the unique circumstances of this case, this is the sentence that is sufficient, but no greater than necessary, to achieve the goals of sentencing laid out in 18 U.S.C. § 3553.

## FACTS

The government relies on and incorporates the facts as set forth in the statement of offense conduct in paragraphs 9 through 19 of the Presentence Investigation Report ("PSR"). Specifically:

On March 5, 2023, Torres was a passenger on board a civil aircraft flying United Airlines Flight 2609, en route from Los Angeles, California, to Boston, Massachusetts. PSR ¶ 9. Passenger 2 was seated in seat 20D, next to Torres.  During the flight attendants' safety briefing prior to takeoff, Torres asked Passenger 2 where on the safety card it showed where the door handle was located, and Passenger 2 stated he did not know.  PSR ¶ 10.

While the aircraft was in flight, and approximately 45 minutes prior to landing in Boston, Torres approached starboard side exit door number 2, disarmed the emergency slide arming lever, and moved the door locking handle out of the fully locked position, approximately ¼ of the way toward the unlocked position.  These actions set off a cockpit alarm, and the captain had Flight Attendant 1 investigate, which Flight Attendant 1 did, after re-arming the door.  PSR ¶ 11.

Flight Attendant 5 (identified as J.W. in the Indictment), who had observed Torres near that door earlier, told Flight Attendant 1 that he believed Torres had tampered with the door. Flight Attendant 1 confronted Torres about whether he had tampered with the door, and Torres

2

became agitated and asked whether there were videos showing that he had tampered with the door. PSR ¶ 12.

Shortly thereafter, Torres stood in Row 20 of the aircraft and shouted that, among other things, he was "Balthazar"; that his father was Dracula; that he was waiting for Homeland Security to shoot him with every bullet in their clip so that he could show he would survive; that he would "kill all the men" on the airplane; and "I'm taking over this plane." PSR ¶ 13.

Wielding a metal spoon on which the bowl portion had been broken off to create a sharper edge, Torres approached Flight Attendant 5 and thrust the broken spoon at Flight Attendant 5 in a stabbing motion that struck Flight Attendant 5 on the area of his shirt collar and tie approximately three times. Passengers tackled Torres to the ground and removed the broken-off spoon from his hand, and passengers and flight staff held Torres down with their bodies for the remainder of the flight through landing. Law enforcement met the airplane. PSR ¶ 14.

In a recorded, post-Miranda interview, Torres told investigators that he went into the bathroom on the plane and broke a spoon "that they should never have let through security" in half to make a weapon. Torres said that when he came out of the bathroom, he went into the galley, disarmed the door, and tried to open it unsuccessfully. He stated that he knew that opening the door at 35,000 feet "probably wasn't going to happen" but he thought he would try. He admitted to knowing that if he had been successful in opening the door many people would die, although he expressed that either he or God would have come back and saved the "good people." He also admitted to trying to stab one of the flight attendants in the neck multiple times. He stated that he believed the flight attendant was trying to kill him, so he was trying to kill the flight attendant first. He also made a number of erratic statements and engaged in erratic behavior in the interview. For example, he signed his name "Balthazar" on the *Miranda* waiver;

stated that he had stabbed himself 21 times with a 7-inch blade and unzipped his jacket to show his wounds to agents; stated that he had married his wife "Bianca" (who he also directed some of his comments on the aircraft to, although Bianca was not a passenger) when she was 4.5 and he was 5; and asked agents to shoot him with an assault rifle. PSR ¶¶ 15-18.

Torres's actions interfered with the flight crew's and flight attendants' ability to attend to their typical duties, as they investigated the cause of the cockpit alarm, dealt with Torres's assault of Flight Attendant 5, and ultimately assisted in restraining Torres, holding him down until the plane landed.   PSR ¶ 19.

### **Competency Evaluations and Mental Health Treatment**

On Monday, March 6, 2023, the government moved that the defendant be detained based on dangerousness under 18 U.S.C. § 3142(f)(1)(B) as well as risk of flight under 18 U.S.C. § 3142(f)(2)(A), and the defendant was taken into the custody of the U.S. Marshals pending a detention hearing.   The defendant was taken to the Donald W. Wyatt Detention Facility that afternoon.   That evening – before the defendant began mental health treatment in custody – without provocation, the defendant attacked a guard at Wyatt, repeatedly punching him in the face until backup arrived to help restrain the defendant. *See* Dkt. No. 12.

On March 9, 2023, at the detention hearing in this matter, the government moved for a competency evaluation of the defendant pursuant to 18 U.S.C. §§ 4241(a), 4241(b), and 4247(b) and (c), citing the defendant's erratic behavior and statements in this incident as well as evidence from prior police reports and court cases suggesting that the defendant had experienced mental health issues in the past. Dkt. No. 12.

The Court granted the government's motion.   Dkt. No. 18.   The initial evaluation by staff at FMC Devens, dated June 13, 2023, indicated that Torres meets the criteria for

4

schizophrenia as well as cannabis use disorder; found that he was experiencing delusions and had no insight into his mental illness; and recommended that he undergo treatment for competency restoration. On July 12, 2023, the Court found that Torres was presently not competent to stand trial, and ordered that Torres be committed for treatment and competency restoration. Dkt. No. 27.  The subsequent report by FMC Devens staff, dated October 24, 2023, indicated that Torres had met with a psychiatrist monthly and remained adherent with his prescribed medication and had been restored to competency.  After Torres returned to Wyatt from FMC Devens, a defense expert expressed concern that he was no longer competent, and the parties jointly requested that the defendant be recommitted for further competency restoration, which the Court allowed. Dkt. No. 46.  After a further evaluation from FMC Devens indicated that Torres's competency had again been restored (Dkt. No. 49), and behavioral and clinical notes indicated that Torres was stable and compliant with treatment (*see* Clinical Notes, Sealed Defense Ex. B; Behavioral Observations, Sealed Defense Ex. C), at a hearing on May 13, 2025, the Court found that Torres was competent to stand trial.  Dkt. No. 80.

Torres pleaded guilty that day, and was released to home detention with strict mental health conditions.  Probation reports that Torres has remained in compliance with those conditions.  Probation has continued to work with Torres to ensure he is receiving an appropriate level of treatment.  Most recently, Probation has reported that Torres has been approved for services by the Department of Mental Health and has an intake appointment scheduled.

## DISCUSSION

I. **Sentencing Guideline Calculation and Plea Agreement**

Probation has calculated defendant's total offense level as 21 and his criminal history

5

category as I.  Accordingly, Probation has calculated a guideline sentencing range ("GSR") in this case to include a term of incarceration of between 37 and 46 months, to be followed by a term of supervised release of two to five years; a fine of $15,000 to $150,000; and a special assessment of $100.  The government agrees with this calculation, which aligns with the parties' calculation in the C plea agreement.  Dkt. No. 75 ¶ 4.

Pursuant to the C plea agreement, and for the reasons set forth below, the government recommends that the Court impose a sentence of 26 months and nine days in prison, as well as five years of supervised release with strict mental health monitoring and treatment conditions. This recommendation represents a downward variance of approximately 11 months from the low-end of the GSR, which is justified based on the factors described below.

## II.     Application of the Section 3553(a) Factors

After calculating and considering the advisory Guidelines Sentencing Range, the Court must consider the factors set forth in 18 U.S.C. § 3553(a) in determining a sentence that is sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in § 3553(a)(2).  These factors include the nature and circumstances of the offenses and the history and characteristics of the defendant, and the need for the sentence imposed to satisfy the statutory purposes of sentencing. They also require courts to consider the kinds of sentences available, the applicable guidelines, pertinent Sentencing Commission policy statements, and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.[1]  In this case, these factors point to a sentence of imprisonment of 26 months and nine days in prison and five years of supervised release. The

---

[1] Notably, Probation notes that there are insufficient number of defendants sentenced under the same guideline with the same criminal history category to allow for sentencing comparisons. PSR ¶ 84.

6

government discusses below the § 3553(a) factors that are particularly salient to the facts of this case.

### A. Nature and Circumstances of the Offense; Need for Sentence Imposed to Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment and Deterrence, and Protect the Public

The nature of the offense is quite serious. Torres, while untreated for schizophrenia, attempted to open an airplane cabin door while the plane was in flight, stood shouting on the airplane, stated that he was taking over the plane, threatened to kill all the men on the aircraft, and ultimately attempted to stab one of the flight attendants in the neck multiple times with a metal spoon that he had broken in the plane lavatory to create a sharper edge. Torres had to be physically restrained by passengers and flight staff for the remainder of the flight. The experience was a terrifying ordeal for all involved. The sentence in this case must take into account the harm that was suffered by J.W., the fear experienced by the other passengers and crew, and the serious danger posed by Torres's actions.

Under the circumstances here (described further below), a sentence of 26 months, much of which was spent in a locked mental health facility, is a significant sentence reflecting the significant harm caused and risked by the defendant's actions, while also balancing that against the defendant's unique characteristics. As noted below, the lengthy term of supervised release with strict mental health conditions are devised to ensure the safety of the community.

### B. The History and Characteristics of the Defendant; His Need for Medical (Mental Health) Treatment

In this case, the history and characteristics of the defendant, and in particular the mental health needs of the defendant, are particularly important to consider in fashioning an appropriate sentence.

The government acknowledges and has considered certain sympathetic factors about the defendant's background included in the PSR. Despite suffering some trauma in his childhood and teenage years (PSR ¶ 45, 59), the defendant maintained social relationships, earned Eagle Scout rank in the Boy Scouts, played high school football and served in student government for three years, graduated high school, and got within three classes of obtaining his associate's degree, before a combination of financial troubles, mental health struggles (both his own and his father's), substance use, and a back injury from a serious car accident derailed him. *See* PSR ¶¶ 45-46, 51, 57-61, 64-65. Although the defendant has had a history of erratic behavior since originally being diagnosed with schizophrenia as a young adult (PSR ¶¶ 57-61), he has no criminal convictions and has a criminal history score of zero. PSR ¶ 37. He has a close relationship with his mother, who has supported him throughout his struggles, who is currently serving as his third-party custodian, and with whom he is currently living and expects to continue living. PSR ¶ 49; Dkt. No. 79.

Mental health evaluations conducted shortly after the incident suggest that, at the time of the incident, Torres was experiencing delusions related to his diagnosis of schizophrenia, which at the time was not being properly treated. Since he has been receiving treatment, he has not had any disciplinary issues. *See* PSR ¶ 5. Although Torres's mental health condition does not negate his competency nor his criminal responsibility, it does help to explain his actions, and the mental health evaluations suggest that with proper mental health treatment, Torres will not pose a danger to the community if sentenced to the 26 months and nine days in prison that he has been incarcerated to date.

In light of all of these factors, a sentence of over 26 months in prison, with five years of supervised release with strict mental health monitoring and treatment conditions, as well as no-

fly conditions, is sufficient, but not greater than necessary, to accomplish the goals of sentencing set forth in § 3553(a). The five years of supervised release are particularly important to ensure that the defendant remains in compliance with his mental health treatment.

### C. Victim Impact and Restitution

The flight attendant victim in this case has been notified of his rights and has chosen not to provide a victim impact statement or to request restitution.

### D. Conditions of Supervised Release

The government requests that the Court impose all of the standard conditions of supervised release and all of the special conditions recommended by Probation and agreed to by the parties in the Plea Agreement (Dkt. No. 75), specifically:

1. Defendant must not knowingly have any contact, direct or indirect, with any victims in this case.

2. Defendant must participate in a mental health treatment program as directed by the Probation Office.

3. Defendant lives with his mother or in another housing situation approved by Probation.

4. Defendant takes all necessary steps to maintain Medicare and MassHealth insurance; once deemed eligible, Defendant works with the Department of Mental Health and complies with recommended evaluations and treatment.

5. Defendant remains in compliance with mental health evaluations and treatment as directed by Probation, including regular monitoring by a psychiatrist.

6. Defendant remains in compliance with taking all prescribed medication as prescribed.

7. Defendant signs all releases necessary to permit Probation to monitor mental health care and compliance.

8. Defendant does not engage in air travel without the express advance permission of Probation.

9. Defendant is required to contribute to the costs of evaluation, treatment, programming, and/or monitoring, based on the ability to pay or availability of third-party payment.

These conditions were carefully fashioned in consultation with the defendant's care team to ensure that the defendant receives the mental health care that is necessary to ensure that he can live safely within the community.

## CONCLUSION

For the foregoing reasons, and those to be articulated at the sentencing hearing, the government respectfully recommends that this Court impose a sentence of 26 months and nine days in prison, to be followed by a term of supervised release of five years with strict mental health conditions; and the mandatory special assessment of $100. Such a sentence would be sufficient, but not greater than necessary, to reflect the seriousness of the offense and the goals of sentencing.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

By: */s/ Elianna J. Nuzum*
Elianna J. Nuzum
Assistant United States Attorney
John Joseph Moakley U.S. Courthouse
One Courthouse Way, Suite 9200
Boston, MA 02210
elianna.nuzum@usdoj.gov
617.748.3100

July 25, 2025

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Elianna J. Nuzum*
Elianna J. Nuzum
Assistant U.S. Attorney

July 25, 2025